UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

EDNA ALLEN, and )
VICKIE ALLEN-HUGHES, )
 )
      Plaintiffs, )
 )
v. )     No.:   3:18-CV-259-TAV-DCP
 )
WYNDHAM VACATION )
RESORTS, INC., and )
WYNDHAM VACATION )
OWNERSHIP, INC., )
 )
      Defendants. )


## <u>MEMORANDUM OPINION</u>

      This civil action, brought by plaintiffs Edna Allen and Vickie Allen-Hughes, is before the Court on Defendants' Motion to Dismiss the Third Amended Complaint [Doc. 40] and Defendants' Motion for Partial Summary Judgment [Doc. 48]. Plaintiffs responded in opposition [Docs. 44, 51], and defendants replied [Docs. 17, 54]. This matter is now ripe for the Court's review.

      For the reasons explained below, defendants' motion to dismiss [Doc. 40] is **GRANTED**, and defendants' motion for summary judgment [Doc. 48] is **GRANTED in part** and **DENIED as moot in part**. Because this Court does not have jurisdiction over the remaining claims, the case will be transferred to the Middle District of Florida.

## I. Background

This cause of action arises out of plaintiffs' purchase of Vacation Ownership Interests ("VOI") from Wyndham Vacation Resorts, Inc. ("WVR") and its parent company Wyndham Vacation Ownership, Inc ("WVO") [Doc. 38 ¶¶ 14, 16]. Plaintiffs purchased three VOIs, executing a separate contract for each: a 2011 purchase in Sevierville, Tennessee [*Id.* ¶¶ 56–66], a 2012 purchase in Myrtle Beach, South Carolina [*Id.* ¶¶ 67–76], and a 2014 purchase in Williamsburg, Virginia [*Id.* ¶¶ 77–83]. Plaintiffs brought this complaint[1] containing several claims against defendants, including intentional misrepresentation, constructive fraud, breach of contract, negligent misrepresentation, and fraudulent concealment, in addition to violations of the Tennessee Timeshare Act, T.C.A. § 66-32-101 [*See* Doc. 38].

Defendants move to dismiss several of plaintiffs' claims. First, defendants state that this Court lacks personal jurisdiction over the South Carolina and Virginia VOIs and move for dismissal or transfer of those claims to a proper venue [Doc. 40 ¶ 4, 8]. Second, defendants state that the fraud-based claims are barred by Tennessee's three-year statute of limitations [*Id.* ¶ 9]. Third, defendants argue that the claims for violation of the Tennessee Timeshare Act are barred by the four-year statute of repose [*Id.* ¶ 10]. Defendants move for summary judgment [Doc. 48] for many of the same reasons and additionally argue that plaintiffs' breach of contract claim fails because plaintiffs do not, and cannot, point to a term of the agreement that defendants allegedly breached [*Id.* ¶ 8].

---

[1] References to the "complaint" indicate the Third Amended Complaint [Doc. 38].

## II.    Legal Standard

Defendant files its motions under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 56.  The Court will first analyze plaintiffs' claims under Rule 12(b) and then address any remaining claims under Rule 56.

First, defendant moves for dismissal pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  A federal plaintiff bears the burden of establishing the existence of personal jurisdiction.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  The Court finds it unnecessary to conduct an evidentiary hearing on the basis of personal jurisdiction.  Accordingly, the Court must consider the pleadings and affidavits in a light most favorable to plaintiff, and dismissal under Rule 12(b)(2) is "proper only if all the specific facts which [plaintiff] allege[es] collectively fail to state a prima facie case for jurisdiction."  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  However, the Court need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff."  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).  And, once a defendant submits "affirmative evidence showing that the court lack[s] jurisdiction, mere allegations of jurisdiction are not enough;" rather, a plaintiff must "set forth, by affidavit or otherwise, specific facts showing jurisdiction."  *Parker v. Winwood*, 938 F.3d 833, 839–40 (6th Cir. 2019).

Second, as for Rule 12(b)(6) motions, Rule 8(a)(2) sets out a liberal pleading standard.  *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004).  Thus, pleadings

3

in federal court need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* (alterations in original). "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557).

In deciding a Rule 12(b)(6) motion, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This assumption of factual veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is ultimately "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.* at 679. In conducting this inquiry, the Court "must construe the complaint in a light most favorable to plaintiff[ ], accept all well-pled

4

factual allegations as true, and determine whether plaintiff[ ] undoubtedly can prove no set of facts in support of those allegations that would entitle [her] to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

Third, Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). The moving party bears the burden of establishing that no genuine issues of material fact exist and may meet this burden by affirmatively proving their case or by highlighting the absence of support for the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record, including depositions, documents, affidavits, and other materials, upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(A). There must be more than a "mere scintilla of evidence"

5

to withstand a motion for summary judgment, *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007), and any genuine issue of fact must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. 477 U.S. at 248. If a reasonable juror could not find for the nonmovant, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

## III. Analysis

### A. Personal Jurisdiction and Venue Transfer

"A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident defendant." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). Tennessee courts are permitted to exercise personal jurisdiction upon "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6). The due process requirements of the Tennessee Constitution are "co-extensive with those of the United States Constitution." *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 741 (Tenn. 2013) (citation omitted); *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) ("The Tennessee long-arm statute has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause"). Therefore, if the exercise of personal jurisdiction passes constitutional muster under the United States Constitution, it is permissible under Tennessee law. *Id.* at 740–41.

6

Federal "[d]ue process requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)). This requirement "ensures that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (citations omitted) (internal quotation marks omitted).

The Court will first analyze personal jurisdiction over defendants WVR and WVO with regard to a sub-set of plaintiffs' claims. Because the Court ultimately concludes that it lacks jurisdiction over these claims, the Court will transfer the matter to a district in which jurisdiction is proper.

### 1. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Defendants admit they "have some tie to Tennessee in the form of timeshare resorts, offices, and customer contact" [Doc. 41 p. 6]. The complaint additionally references: (1) at least four timeshare properties and other resorts in Tennessee, (2) several offices in Tennessee including in Nashville, Crossville, and Sevierville, (3) large scale marketing and sales within the state, (4) marketing and sales of services and products using the internet to

7

Tennessee residents, (5) and the maintenance of employees within the state [Doc. 38 ¶ 5]. However, merely doing business in a particular state is not sufficient to establish general personal jurisdiction. *Id*. at 139 n.20.

Though the complaint alleges defendants have continuous and systematic contacts with Tennessee [Doc. 38 ¶ 5(e)], plaintiffs do not address and do not appear to argue for general jurisdiction over defendants in their response, instead beginning their briefing with specific jurisdiction. Plaintiffs admit defendants are incorporated in Delaware and have their principal place of business in Florida [Doc. 38 ¶¶ 2–3] and the Supreme Court has indicated that a corporation may very rarely be deemed "at home" in a state where it is not incorporated and does not have its principal place of business. *Daimler*, 571 U.S. at 138–39. This Court does not, therefore, possess general personal jurisdiction over these defendants.

### 2. Specific Jurisdiction

In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Indah v. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal quotation marks omitted). The Sixth Circuit applies a three-part test for determining whether an exercise of specific jurisdiction falls within constitutional limits: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant

8

or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).

The second prong is determinative in this case and is satisfied "if a defendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe, Inc.*, 89 F.3d at 1262. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723–24 (6th Cir. 2000). This prong "does not require that the cause of action formally 'arise from' defendant's contacts with the forum" but "only 'that the cause of action . . . *have a substantial connection* with the defendant's in-state activities.'" *Third Nat. Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Mohasco Industries*, 401 F.2d at 384 n.27) (emphasis original). Yet, "more than mere but-for causation is required to support a finding of personal jurisdiction. To the contrary, the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 507 (6th Cir. 2014). If only but-for causation were required, it would be "vastly overinclusive in its calculation of a defendant's reciprocal obligations" and would have "no limiting principle; it literally embraces every event that hindsight can logically identify in the causative

9

chain," resulting in "no meaningful relationship to the scope of the 'benefits and protection' received from the forum." *Id*. at 508.

Plaintiffs, in their complaint and briefs, identify three potential connections between the Tennessee contract and the causes of action relating to the South Carolina and Virginia VOIs that may establish this prong: (1) the Virginia VOI sales agent indicated that another purchase would cure problems with the prior VOIs, (2) the contracts rolled into, and are dependent upon, one another, and (3) the plaintiffs were using points purchased from the prior VOI and defrauded into purchasing the subsequent VOI while on that vacation. None of these theories establish specific personal jurisdiction.

First, plaintiffs' complaint makes vague reference to plaintiff's previous contract. The Court notes that plaintiffs did not make this argument in the briefing, but in an effort to view the pleadings and evidence in a light most favorable to plaintiff, the Court will address it nonetheless.

The plaintiffs' complaint begins with general information and facts relating to the events, including sections entitled "Common Participation in Scheme to Defraud" and "Consumer Affairs Complaints/ Notice of Wrongful Conduct" [Doc. 38 pp. 6, 9]. The next several sections detail the allegations as they relate to the three VOI purchases. In Tennessee, they were invited to an owner update meeting where sales agents made a series of approximately seven allegedly false or misleading statements, resulting in plaintiffs purchasing a timeshare that day [*Id*. at ¶¶ 56–66]. Addressing the South Carolina VOI, the complaint states an agent "ended up giving the Plaintiffs a sales presentation" which

included telling plaintiffs that "since they upgraded in Sevierville, they would no longer be able to stay in Myrtle Beach" [*Id*. at ¶¶ 67–68]. The agent said that, because plaintiffs had so many points, they should upgrade again for only a "little more money" which would allow them to visit Myrtle Beach and receive many amenities and perks [*Id*. at ¶¶ 69–72]. Plaintiffs purchased the South Carolina VOI [*Id*. at ¶ 76] and allege approximately seven false or misleading statements during the course of the sales presentation. Discussing the Virginia VOI, plaintiffs state that they were invited to an owner update meeting where approximately four allegedly false or misleading statements were made, including that a purchase would "fix any and all problems caused by previous purchases" [*Id*. at ¶¶ 77–83]. This reference to previous purchases is the only reference in these sections about a connection between the VOIs.

Though this reference about correcting problems with the previous purchases thinly ties back to the Tennessee purchase, the operative facts of the misrepresentations made, and the execution of the contracts at issue, did not occur in Tennessee. This vague reference does not establish a substantial enough connection such that the causes of action based on the South Carolina and Virginia VOIs were proximately caused by the defendants' contacts in Tennessee.

Plaintiffs file this complaint as a result of many allegedly misleading statements as a whole. [*Id*. at ¶ 121 (stating that they would not have purchased the timeshares had the undisclosed information been disclosed)]. The vast majority of the complaint does not indicate a dependence on the previous contract or causal relationship between the

purchases. The complaint alleges, as to the purchase of the third VOI, that they were misled to believe that a further purchase could correct prior problems, but the complaint does not contain such an allegation with regard to the second VOI, which indicates that the three VOI contracts were independent of one another. That plaintiffs may have been lied to or defrauded in three separate places by the same defendants does not establish a sufficient casual connection. Additional fabricated misrepresentations by sales representatives, and plaintiffs' resulting misconceptions, about a prior contract do not retroactively create the causation necessary to connect these causes of action to Tennessee.

Second, plaintiffs argue there is a connection with Tennessee because that contract was "directly rolled into [sic] South Carolina contract that was itself rolled into the Virginia contract" [*Id.*]. Instead of citing the specific provisions of the contracts that "referenced the prior contract numerous times and describes its 'equity' and rolling into the more recent contracts," plaintiffs state generally "See Exhibit[s] A, B, C to Defendants [sic] Motion to Dismiss" [*Id.*]. The Court has reviewed the sixteen (16) pages of contracts and cannot determine the relevant provisions. Plaintiffs state that the VOI contracts are "rolled into" one another, which is how the timeshares are "'upgraded' without having multiple standalone timeshare ownerships" and that the contracts became a part of one another [*Id.*]. However, in the Court's view, nothing from the contracts indicates the incorporation of prior documents or that the contracts are dependent upon each other. Plaintiffs' general instruction to "see" the documents as evidence of their dependence is not sufficient to demonstrate the connection required to justify bringing defendants into this Court.

12

The complaint also mentions this process and alleges verbal representations by sales agents that plaintiffs had equity they could "roll" into a new purchase [*Id*. at ¶¶ 88(b), 159(g), 176]. Even assuming that such statements were made, viewing the pleadings in the light most favorable to plaintiffs, this does not establish jurisdiction. Plaintiffs do not sufficiently explain what it means that the equity "rolls into" another contract either by citing provisions in the contract or explaining how that process works and how it caused plaintiffs to make subsequent purchases. Plaintiffs' allegations are "not enough" as they must set forth "specific facts showing jurisdiction," which they have not done with regard to this theory. *Parker*, 938 F.3d at 839–40.

In arguing for a connection between the contracts, plaintiffs state in their briefing that "each action that happened" in South Carolina "could not have possibly happened to them without the Tennessee contract and the acts that occurred in Tennessee and the same with Virginia" and that "[h]ad fraud and timeshare act violations not occurred in Tennessee, further fraud and timeshare act violations would [not] have and could not have happened" [*Id*. at pp. 4–5]. However, plaintiffs misconceive the type of causation required for jurisdiction. But for the Tennessee misrepresentations, the plaintiffs may not have purchased the second VOI for a variety of reasons; plaintiffs do not indicate that any particular misrepresentations caused later purchases in their complaint. Though the Tennessee contract may be the first in a sequence of events, plaintiffs do not establish a substantial enough connection or sufficient proximate causation. For instance, plaintiffs do not argue that the fraud of sales agents in South Carolina and Virginia was the result of

13

fraud in Tennessee. Instead, plaintiffs argue that, through a more tenuous and distant series of events, plaintiffs purchased several VOIs.

While plaintiffs may have fallen victim to the same sales tactics several times, there is not a connection between the three purchases. Even if the original Tennessee sales agent had indicated that the equity would "roll into" later purchases, by plaintiffs' argument, there would be no limiting principle, and personal jurisdiction would always lie in some state further up the chain of contracts. It would "literally embrace[] every event that hindsight can logically identify in the causative chain" which is precisely what the Sixth Circuit sought to avoid in *Beydoun*. 768 F.3d at 507. Accordingly, this theory does not establish specific personal jurisdiction.

Finally, plaintiffs argue that personal jurisdiction exists because plaintiffs were using their points to stay at a Wyndham resort and, during their stay, they purchased the subsequent VOI [Doc. 44 p. 5]. Plaintiffs provide no legal authority supporting jurisdiction on this basis. This connection is insufficient to hold that this Court has personal jurisdiction over defendants for claims relating to events that occur wherever plaintiffs may have chosen to stay.

Overall, plaintiffs' arguments fail to establish specific personal jurisdiction. Though plaintiffs argue that the contracts are interrelated, they have failed to support their assertions by providing facts demonstrating jurisdiction. *Parker*, 938 F.3d at 839–40. That the events in Tennessee were the first in a chain of similar events does not make it the proximate cause of such events. Moreover, that the plaintiffs were "impacted in Tennessee

14

by the Wyndham Defendants' actions in [South Carolina and Virginia] is insufficient to establish that the operative facts of the [plaintiffs'] claims arose out of Tennessee." *Bobick v. Wyndham Worldwide Operating, Inc.*, No. 3:18-CV-00514, 2018 WL 4566804, at *7 (M.D. Tenn. Sept. 24, 2018). Plaintiffs state that there "is most certainly a causal link," [Doc. 44 p. 5] but in light of plaintiffs' inability to make a prima facie showing, even viewing the pleadings and affidavits most favorably to plaintiffs, the Court finds otherwise.

Moreover, on each of plaintiffs' theories of personal jurisdiction, the Court finds that the exercise of jurisdiction over these defendants would not be reasonable, in that these defendants have not had sufficient minimum contacts with the state for the exercise of personal jurisdiction to "comport with traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68 (internal citation and quotation marks omitted). Defendants, Delaware corporations and Florida residents, cannot be expected to be brought into court in Tennessee to defend against allegations lodged by North Carolina residents over allegedly tortious conduct in South Carolina and Virginia. The connections are too tenuous. Plaintiffs have failed to meet their burden in demonstrating that this Court possesses specific personal jurisdiction over defendants relating to any causes of action arising from the South Carolina and Virginia VOIs, and the Court will, therefore, **GRANT** defendants' motion as to these claims pursuant to Rule 12(b)(2).

### 3. Venue Transfer

Upon a finding that this Court lacks personal jurisdiction, defendants request dismissal of these claims, or in the alternative, transfer to a judicial district in which one or

15

more of the defendants is subject to personal jurisdiction [Doc. 41 p. 13] and plaintiffs request transfer of the case "to the appropriate court" [Doc. 44 p. 6].

When a Court finds a lack of jurisdiction, 28 U.S.C. § 1631[2] authorizes transfer "in the interest of justice" to a court "in which the action . . . could have been brought at the time it was filed." *See Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (holding that § 1631 "applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction."). Though defendants request dismissal of the claims for which this Court lacks personal jurisdiction, the Court does not find dismissal to be appropriate, as it has not reached the merits. This is particularly true when the outcome of several claims may depend on the statute of limitations. *Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 484 (6th Cir. 2009) ("[T]he reasons for transferring a case to a proper forum rather than dismissing are especially compelling if the statute of limitations has run since the commencement of the action, so that dismissal might prevent the institution of a new suit by the plaintiff and a resolution on the merits."); *Roman*, 340 F.3d at 328 (Section 1631 may "protect a plaintiff against either additional expense or the expiration of a relevant statute of limitations in the event that the plaintiff makes an

---

[2] Plaintiffs do not identify under which venue transfer statute they seek relief. Defendants' brief mentions 28 U.S.C. § 1406 which authorizes transfer "in the interest of justice" if a case is filed in the incorrect venue. However, the Court recognizes its authority to transfer the case *sua sponte* and finds transfer under 28 U.S.C. § 1631 more appropriate to address the specific issues of this case regarding personal jurisdiction. *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003) ("Congress has enacted a number of statutes that give federal courts the power to transfer cases *sua sponte*;" and noting that the Supreme Court has not recognized lack of personal jurisdiction alone as sufficient to invoke a § 1406 transfer).

error in trying to select the proper court within the complex federal court system."). Under section 1631, the action "shall proceed as if it had been filed in or noticed for the Court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." Accordingly, the Court finds it in the interests of justice to transfer the case pursuant to § 1631 to cure want of jurisdiction.

Plaintiffs do not identify a court in which the case may have been brought originally or to which district they would prefer the case be transferred. Defendants stated that they "were, at all relevant times, located exclusively in Orlando, Florida, which is in the Middle District of Florida" [Doc. 41 p. 12]. As previously mentioned, defendants have their principal place of business in Orlando, Florida [Doc. 38 ¶¶ 2–3]. The Middle District of Florida therefore has general personal jurisdiction over the defendants who may be deemed to have continuous and systematic affiliations with the state to render them at home. 28 U.S.C. § 89 (establishing that the Middle District of Florida encompasses the city of Orlando); *Goodyear*, 564 U.S. at 919; *Daimler*, 571 U.S. at 138–39. This also satisfies the venue statute, as both defendants reside at the same address within that district [*Id.*]. 18 U.S.C. § 1391(b)(1) ("a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"), § 1391(c)(2) ("an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."). All claims relating to the Tennessee VOI are dismissed in the remainder of this opinion as discussed below. Therefore, the only

17

remaining claims in this case are those relating to the South Carolina and Virginia VOIs. Accordingly, the Court will transfer the remainder of the case to the Middle District of Florida.

### B.    Statute of Limitations

Defendants move to dismiss plaintiffs' intentional misrepresentation, constructive fraud, negligent misrepresentation and fraudulent concealment claims, pursuant to Rule 12(b)(6) as barred by the statute of limitations [Doc. 40 p. 5]. Defendants state Tenn. Code Ann. Section 28-3-105 creates a three-year statute of limitations for these fraud-based claims. Under Tennessee law, "[a] defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012).

The applicable consideration here is the date on which the plaintiffs' claims accrued, or when the applicable statute of limitations began to run. Under the discovery rule, the cause of action accrues when plaintiff has actual knowledge of a claim or is put on constructive or inquiry notice, meaning plaintiffs have "actual knowledge of facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." *Id*. at 459. "[I]nquiry notice charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed" meaning that once a plaintiff "gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run." *Id*. (citations omitted).

18

Addressing the third consideration, the statute of limitations "is tolled only during the period when the plaintiff has no knowledge that a wrong occurred, and, as a reasonable person is not put on inquiry." *Graham v. Lake Park Condo-Signal View*, Nos. E2011–02739–COA–R3–CV, E2012–00434–COA–R3–CV, 2013 WL 5974921 at *4 (Tenn. Ct. App. Nov. 8, 2013). Accordingly, the discovery rule "does not delay the accrual of a cause of action . . . until the plaintiff knows the full extent of the damages" or "discovery of all the facts that affect the merits of his or her claim" *Id.*; *see also Cagle v. Hybner*, No. M2006-02073-COA-R3-CV, 2008 WL 2649643 at *14 (Tenn. Ct. App. July 3, 2008) ("a plaintiff is not permitted to delay filing suit until all the injurious effects or consequences of the alleged tortious conduct are fully known."). The Tennessee Supreme Court has held "that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard." *Citicorp Mortgage Inc. v. Roberts*, No. 02S019712CH00109, 1998 WL 690839 at *3 (Tenn. Oct. 5, 1998). To determine whether the statute of limitations is tolled,

> the issue of whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question. Where, however, the undisputed facts demonstrate that no reasonable trier of fact could conclude that the plaintiff did not know, or in the exercise of reasonable care and diligence should have known, that he sustained an injury as a result of the defendant's wrongful conduct, dismissal of the complaint is appropriate.

*Cagle,* 2008 WL 2649643 at *14.

19

Defendants argue that in invoking the discovery rule at the dismissal stage, plaintiffs have not met their burden to allege "any facts or events which tend to suggest [p]laintiff did not know or had no reason to know of the alleged events..." because their allegations are conclusory and vague [Doc. 41 p. 15]. *Phillips v. Nationstar Mortgage, LLC*, No. 3:13-cv-01414, 2016 WL 2866164, at *6 (M.D. Tenn. May 17, 2016). Plaintiffs allege in the complaint that they "did not discover the extent of the fraud that had occurred until July of 2015 when visiting a Wyndham site" [Doc. 38 ¶ 107] and state in their briefing that they did not understand the "full extent of the fraud perpetrated upon them until they contacted legal counsel in July of 2015" [Doc. 44 p. 8]]. Only upon contacting counsel were they "able to investigate and discover the extent of the fraud" [*Id.*]. Plaintiffs' state that they did not discover the harm done until a later date as a result of defendants concealing various facts, including that the timeshare was not an investment, it could not be rented, the return rate was lower than stated, there was no after-market value, reservations were difficult to come by, and the rooms were being rented on their website for a lower cost thereby decreasing exclusivity of timeshare ownership [Doc. 44 pp. 7–8].[3]

Contrary to plaintiffs' allegations, they need not know the full *extent* of the fraud for the statute of limitations to begin to run, as previously discussed. *Redwing*, 363 S.W.3d at 459. That plaintiffs were previously aware of some fraud puts them on notice that, had plaintiffs exercised reasonable care and diligence, the injury should have been discovered.

---

[3] As discussed below, at least one of the claims was not concealed as evidenced by the contract's terms.

Plaintiffs' action in seeking counsel tends to indicate some prior knowledge of an injury requiring legal advice or assistance in filing a suit. The point at which plaintiffs were injured by being unable to obtain a reservation, rent their unit, or receive the desired investment return, is when plaintiffs became aware of their injury or had gained actual knowledge of facts sufficient to put a reasonable person on notice that they have suffered an injury.

Plaintiffs do not indicate when they first became aware of these various injuries. The parties entered into a tolling agreement dated January 11, 2017, and defendants state that the agreement provides that claims already barred as of the effective date of the agreement remain barred [Doc. 41 p. 15].[4] Accordingly, if claims were preserved as of January 2017, claims would accrue and statute of limitations would begin to run in January 2014. By January 2014, plaintiffs had already purchased the second timeshare in South Carolina in 2012. It is therefore highly likely that the parties had already encountered difficulties in making reservations or in attempting to rent their unit by this point, having already been in the program for several years. Paragraph 146(c) of the complaint indicates that plaintiffs were told that an upgrade would increase their reservation power "but Plaintiffs found that that [sic] they could not, and they did not have any better success in getting reservations, which was already poor." This indicates that plaintiffs had already experienced the alleged injury of difficulty with obtaining reservations. However, because

---

[4] Neither party provided a copy of the agreement, but its effect is of no consequence here as the statute of limitations had already run.

21

no specific allegations have been made in the complaint to determine conclusively from which date the discovery rule applies, the Court turns to the contract at issue.

Defendants argue that plaintiffs entered into the Tennessee VOI on July 2, 2011, and that contract contains provisions stating that no representations outside of the purchase agreement would be binding on the parties [Doc. 40-1 ¶ 17 ("This Agreement, and any and all other documents executed at the same time as this Agreement, constitutes the entire agreement between the parties hereto. No representation or warranties, oral or written, other than the representations set forth in said documents, have been relied upon by the parties.")]. Defendants argue that, because plaintiffs are presumed to have understood and consented to the language in the agreement, this means that plaintiffs should be aware that any oral representations would not be included in the agreement and plaintiffs would have been on notice of written terms that directly refuted the alleged oral misrepresentations at the time of signing the purchase agreement [Doc. 41 pp. 14–15]; *Church v. Perales*, 39 S.W.3d 149, 161 (Tenn. Ct. App. 2000) ("[T]he law presumes that persons who sign documents, having been given an opportunity to read them, are bound by their signatures."); *see also Giles v. Allstate Ins. Co*., 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993) ("It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed, or did not know what it contained."). Accordingly, defendants argue, these claims should have been filed no later than July 2, 2014.

22

Plaintiffs were on notice of their fraud-based claims as of the date of execution of the contract. The written provisions of the contract directly contradict the oral representations of the sales representatives. For example, the complaint states that the Tennessee Wyndham sales representative "said the Plaintiffs could make a large sum of money renting the timeshare" [Doc. 38 ¶ 61] while the contract stated, in a section entitled Non-Investment Purchase, "Owner represents that Owner is purchasing an Ownership for the purpose of recreational and social use, and not for financial profit" [Doc. 40-1 ¶ 12)]. This contradiction should have placed the plaintiffs on notice of the questionable nature of the representations regarding investment potential and plaintiffs' potential profits.[5]

Plaintiffs cite the Court's ruling in *Burgess v. Bluegreen Vacations Unlimited* [Doc. 33, 3:18-cv-119-HSM-DCP] as support that the contract does not put the plaintiff on notice of the harm done to them *per se* [Doc. 44 p. 8]. However, plaintiffs misinterpreted the arguments made in that case and its application here. The Court did not hold that a contract does not necessarily put the plaintiffs on notice of the harm; defendants in that case did not raise arguments about the terms of the contract itself. Instead, the defendants argued that the statute of limitations began on the date the misrepresentations were made. The Court therein noted that the claims did not accrue on the date of the misrepresentations

---

[5] Defendants additionally cite an order from the Chancery Court for Davidson County, Tennessee, *Boy v. Wyndham et al.*, 18-839-III, which stated "[t]he Court further finds that the discovery rule did not toll the statute of limitations for Plaintiff's' fraud-related claims because the terms of the sales contract put the plaintiffs on notice of the alleged wrongs or contradictions that form the basis of these claims." The Court includes this reference as further support of its approach here.

23

and discussed the discovery rule. The Court held that a plaintiffs' specific allegation that "shortly after the purchase, but not more than three years ago, Plaintiff discovered the full extent of the falsity of these representations and the true intent of the Defendant" was "too conclusory and lack[ed] a factual predicate from which the discovery rule can be applied," so the Court looked to the pleadings in their entirety, including the contracts at issue. The Court did not reference terms of the contract in its order, instead analyzing the oral representations of the sales agents. In that case, plaintiff had been led to believe she could use membership points to make reservations and sublease them, so the Court held that plaintiff may not have known of the falsity of the sales person's representations until plaintiff attempted to make a reservation some time before the points' expiration. Because the expiration date was one year after the purchase, the Court held under the discovery rule, such was the date that the statute of limitations began to run. Accordingly, one year after the date of the misrepresentations is representative of the latest point at which plaintiffs may first have been injured or on notice to investigate their injury as it relates to the misrepresentations regarding reservation capabilities.

Using such considerations here, and applying the discovery rule from July 2, 2012, one year after the contract was executed,[6] plaintiffs' claims are still not within the statute of limitations, as this action was filed in 2018 with the tolling agreement effective

---

[6] The contract states that points are renewed annually throughout the term of the ownership [Doc. 40-1 ¶ 10(b)]. It is not clear from this document that this indicates the previously accrued points expire at the point of renewal. However, the Court takes the parties' arguments for the applicability of this case to indicate the same applies in the present contract. Additionally, since the applicability of the *Burgess* case is not determinative of this issue, the Court does not find it critical to determine the expiration policy of these points for purposes of this analysis.

January 2017. Nevertheless, application of *Burgess* is not even necessary in this case, as here the contract's plain terms create a contradiction.

Whether analyzed under the specific allegation plaintiffs make regarding the statute of limitations (too vague but most likely before the second purchase), the pleadings as a whole and applying *Burgess* at plaintiffs' behest (July 2, 2012), or analyzing the terms of the contract (July 2, 2011), the claims accrued and statute of limitations had run by the time plaintiffs entered into the tolling agreement. The Court finds that no reasonable trier of fact could conclude that plaintiffs did not know, or in the exercise of reasonable care and diligence should not have known, that they sustained an injury before January 2014, and therefore dismissal is appropriate. Accordingly, plaintiffs' fraud-related claims, Counts I, II, IV, and V, are barred by the applicable statute of limitations, and to the extent that they relate to the Tennessee VOI, such claims are **DISMISSED** pursuant to Rule 12(b)(6) for failure to state a claim.

### C. Tennessee Timeshare Act

Defendants move to dismiss the plaintiffs' Tennessee Timeshare Act ("TTSA") claim, Count VI, pursuant to Rule 12(b)(6) as untimely and barred by the four-year statute of repose [Doc. 40 p. 5]. Defendant states the Tennessee legislature created a statute of repose which reads:

> A judicial proceeding where the accuracy of the public offering statement or validity of any contract of purchase is in issue and a rescission of the contract or damages is sought must be commenced within four (4) years after the date of the contract of purchase, notwithstanding that the purchaser's terms of payments may extend beyond the period of limitation.

25

Tenn. Code. Ann. § 66-32-119. Defendants therefore state that the action must have been filed within four years of the date of execution of the contract, which was executed on July 2, 2011. Defendants again assert that the tolling agreement does not protect claims already barred as of its effective date [Doc. 41 p. 18].

Plaintiffs respond that the TTSA does not create a statute of repose, as the section defendants reference is titled "statute of limitations." Plaintiffs argue neither the text itself nor the defendants' briefing contains any evidence that it was intended to be a statute of repose. A statute of repose, plaintiffs contend, includes two "telltale signs:" "two dates [one for limitations, one for repose] or language such as 'notwithstanding any exceptions to these provisions [the action] must be brought within . . .'; 'in no event'; or 'in any event'" [Doc. 44 p. 10]. Plaintiffs therefore argue that they have properly pled this claim under the discovery rule, the merits of which are addressed in the previous section of this opinion.

The Court previously addressed these arguments shortly after the parties completed their briefing in *Moore v. Westgate Resorts, Ltd., L.P.* No. 3:18-CV-00410-DCLC, 2020 WL 6814666, at *10 (E.D. Tenn. Nov. 18, 2020). There, the parties made the same arguments as here regarding the nature of this statute. The Court therein stated "[i]n the ordinary course . . . a statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued" and that a "statute of repose, on the other hand, puts an outer limit on the right to bring a civil action, which is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *Id.* at *11 (citing *Stein v. Regions Morgan Keegan Select High Income*

26

*Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016)). For instance, a statute of limitations runs from the period of plaintiff's discovery of a wrongful act, whereas the statute of repose runs from the event itself, here, the date of contract. Accordingly, "a statute of repose limits the time within which [an] action may be brought" and is "entirely unrelated to the accrual of a cause of action." *Id.* A statute may contain both a statute of limitations and a statute of repose, and "courts have been known to characterize the same provision as both a statute of limitations and a statute of repose." *Id.*

Having discussed the general differences between the two types of statutes, this Court determined that

> [t]he time limitation provision in the Time Share Act tracks most closely with a statute of repose. The four-year time limit begins on the date "of the contract of purchase," and has no relation to plaintiff's discovery of a purported unlawful act. Tenn. Code Ann. § 66-32-119. The legislative choice to name this provision "Statute of Limitations" does not change the nature of the provision as a statute of repose, as Plaintiffs claim [Doc. 104, pg. 17]. Thus, the limitations period in this cause of action, for claims brought under the Act, began to run at the point of purchase for each Plaintiff.

*Id.* Applying the same analysis, plaintiffs here purchased their Tennessee VOI on July 2, 2011. The statute of repose therefore had run by July 2, 2015. The tolling agreement did not come into effect until 2017 and does not save plaintiffs' claim. Accordingly, this action was brought after the statute of repose had run, fails to state a claim as to the Tennessee VOI, and therefore is **DISMISSED** pursuant to Rule 12(b)(6) and Section 66-32-119 of the Tennessee Time Share Act.

27

### D.    Summary Judgment

Defendants move for summary judgment on plaintiffs' breach of contract claims [Doc. 48 p. 4], arguing that plaintiffs do not, and cannot, point to a specific term of the agreement that defendants breached.  In the complaint, the only specific contractual provision mentioned is that defendants "violated section 5 of the Purchase Agreement and Promissory Note, entitled 'Use and Occupancy' which outlines Plaintiffs' use, occupancy and possessory rights in their Vacation Ownership Interests" [Doc. 38 ¶ 133].  However, no such provision exists in the Tennessee VOI agreement.  The complaint otherwise refers to various general issues like plaintiffs' inability to get reservations where and when they wanted [*Id.* ¶ 135], defendants failing to provide, changing, or eliminating material benefits and services [*Id.* ¶ 137], and plaintiffs being denied access to the properties [*Id.* ¶ 142].

Plaintiffs respond [Doc. 51 p. 8] stating that defendants violated paragraph one, entitled "Ownership,"[7] and paragraph four, entitled "Club Accommodations"[8] of the Tennessee VOI contract [Doc. 40-1].  More specifically, plaintiffs state that defendants denied their requests for reservations or that the ability to reserve a unit was "severely limited to the point of rarely if ever getting reservations they desired" which made plaintiffs

---

[7] "Ownership. Owner is a member of the Association, and is entitled (a) to use Points to reserve the use of accommodations in the Club ('*Club Accommodations*'), (b) to vote for directors of the Association, (c) to vote on major decisions of the association, and (d) through the Club and the Association, to participate in the ownership of the assets of the association" [Doc. 40-1 §1].

[8] "Club Accommodations. Owner shall have access to all existing and future Club Accommodations and the properties within which those Club Accommodations are located ('*Club Properties*'), as well as all other accommodations owned or operated by or associated with Club, wherever located.  Provided however the location and specific nature of the Club Accommodations shall be subject to change in accordance with the Club Instruments (as defined below)" [Doc. 40-1 §4].

"unable to book where and when they wanted to," even calling six to eight months in advance of a desired reservation [Doc. 51 pp. 9–10.]. Plaintiffs allege that reservation availability was limited because defendants only set aside a portion of the units for timeshare owners, thereby "den[ying] access to the properties and benefits to which they are entitled under the terms of the contract" [*Id.* p. 10]. Plaintiffs allege defendants restricted the number of available units but do not cite a term that defendants have breached; no provision guarantees or requires that a certain number or proportion of a resort's total rooms be made available to owners.

In support of plaintiffs' arguments regarding general denial of reservations breaching the Ownership provision, plaintiffs attach an excerpt of the deposition of plaintiff Edna Allen [Doc. 51-4]. The deposition states that "what they didn't tell us was that we could no longer stay at Myrtle Beach. We lost the privilege of going there" [Doc. 51-4 p. 2]. And when asked if they were able to get more reservations, she said "not always . . . they would tell us nothing was available. And this would be months in advance" later clarifying she would call between six and eight months ahead [*Id.* pp. 3–4]. The deposition does not establish that plaintiffs were denied reservations, rather simply that reservations were not booked because they were not available.

Plaintiffs have not established that the ability to book a reservation when and where they wanted was guaranteed by any term of their purchase agreement. The contract states that plaintiffs are "entitled [] to use Points to reserve the use of accommodations in the Club . . . on a space available basis" [Doc. 41-1 ¶¶ 1, 10]. In a statement of understanding,

29

plaintiffs initialed a paragraph that states "I understand that I may request reservations at all CLUB WYNDHAM Plus resorts up to ten (10) months[9] in advance and that all reservations are confirmed on a space available basis" [Doc. 48-1 p. 10].

Plaintiff Allen, in her deposition, said plaintiffs were trying to use their points in July and August during the summer and that they "could always book. Not necessarily where our first choice was" [Doc. 48-7 p. 6]. Plaintiff Allen-Hughes testified during her deposition about her attempts to make reservations. The "only example" she could provide of not being able to make a reservation was during a popular golf tournament in Nashville [Doc. 48-8 pp. 8–10]. She admitted that plaintiffs were not guaranteed to be able to reserve at a particular time and acknowledged that she did not know whether she could have made reservations at other locations, since she only attempted to reserve in Nashville [*Id.*].

After the purchase in September 2012, plaintiffs were able to book in Myrtle Beach, at their preferred property in the presidential suite at their preferred time of year [*Id.* at p. 22–23].[10] Otherwise, plaintiff Allen-Hughes stated that she traveled using her timeshare for a couple days "here or there" [*Id.* p. 23]. After the Virginia purchase, plaintiff Allen-Hughes rented out her timeshare interest "a whole handful of weekends" and made approximately $4,500 during late summer of 2015 [*Id.* pp. 13–16]. Plaintiffs fail to

---

[9] Plaintiffs argue they were not able to make reservations by calling six to eight months in advance. That the reservations open up ten (10) months in advance could indicate that the reservations may have been available prior to their inquiry and may have been already confirmed and taken by other Wyndham owners.

[10] As to plaintiffs' assertion that they were not told they could not stay there any longer, the contract explicitly states that oral representations are not a part of the contract [Doc. 48-1 ¶ 17].

demonstrate how access to the properties was denied to them, as they used their timeshare interest to book vacations for themselves and to rent out their interest at their preferred properties, during their preferred time of year. They admitted that they were not guaranteed any particular time or location and the reservations were confirmed on a space available basis. They used such space when available and have failed to support their claim that defendants breached the Ownership and Club Accommodations clauses of the contract.

Plaintiffs state defendants breached their contract by alerting plaintiffs that their accounts would be frozen and violated the covenant of good faith and fair dealing by telling plaintiffs that they could not use their timeshare [Doc. 51 pp. 9–10]. In response to interrogatories from defendants, plaintiffs state that defendants further breached the covenant because "benefits indicated in the [Public Offering Statement] have been curtailed or eliminated" leading plaintiffs to not receive the "full benefit of what they bargained for. Including the Pathway program that was discontinued. The relationship between the number of points necessary and the number of points required for reservations is not disclosed and was subject to misrepresentation and breach" [Doc. 48-8 p. 39].

To the extent that plaintiffs base their claim on the implied duty of good faith and fair dealing, this argument fails. This duty is not a clause in a contract and "does not . . . create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Lamar Advertising v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009).

To the extent that plaintiffs argue benefits were eliminated, they do not identify what benefits they lost that were included in the Tennessee VOI documentation. The Pathways program, though eliminated, was only included in their Virginia VOI and defendants reserved the right to terminate the program at any time [Doc. 48-3 p. 29].

Plaintiffs' argument about the disclosure of the points necessary to make a reservation also fails. Plaintiffs do not identify how this would breach the contract. Nonetheless, such information was available to plaintiffs through the Membership Directory. The directory includes instructions on how to read the points charges and the specific charts for the properties [Doc. 48-6 pp. 11–19].

Defendant makes various additional arguments regarding the general grievances plaintiffs lodge against defendants in the complaint.[11] The Court does not find it necessary to address the merits of these arguments, as they do not relate to any particular provision in the contract after the Court's review of the document. After defendants met their burden, plaintiffs did not point to evidence in the record to allow a jury to find in its favor, and plaintiffs may not proceed to trial merely on the basis of the pleadings. *Universal Match Corp.*, 778 F. Supp. at 1423.

In sum, plaintiffs state that "the entire idea was to purchase timeshare [sic] so that reservations could be made for vacations. When the Defendants unreasonable [sic] restrict

---

[11] Defendants state that plaintiffs generally assert that they were unable to book vacations when and where they preferred, defendants failed to provide incidental services to the timeshare ownership, defendants' personnel were unavailable to assist with booking reservations, defendants eliminated benefits provided in the Public Offering Statement, defendants discontinued the Pathways Program, and defendants did not disclose the number of points needed to book reservations [Doc. 49 pp. 15–20].

the reservations, they have breached the contracts" [Doc. 51 p. 10]. However, the parties are not bound by ideas. They are bound by the terms of the contract, and plaintiffs have not identified how defendants breached said contract. The Court concludes that no genuine issue of material fact exists regarding plaintiffs' breach of contract claim, Count III, as it relates to the Tennessee VOI. Defendant's motion for summary judgment is on this claim is therefore **GRANTED in part** and that claim will be **DISMISSED**. To the extent the arguments presented in the motion for summary judgment are duplicative of the issues or claims handled at the dismissal stage, the motion is **DENIED as moot in part**.

## IV. Conclusion

For the reasons discussed above, defendants' motion to dismiss [Doc. 40] will be **GRANTED**. Additionally, defendants' motion for summary judgment will be **GRANTED in part** and **DENIED as moot in part**. The Clerk will be **DIRECTED** to **TRANSFER** the remainder of this action to the Middle District of Florida and to **CLOSE** this case.

An appropriate order will enter.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

33